UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MYRA BROUSSARD**                                      **CIVIL ACTION**

**VERSUS**                                                       **NO. 19-527-BAJ-RLB**

**BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY
AND A & M COLLEGE, ET AL.**

**ORDER**

Before the Court is the Motion to Compel and Alternatively, for Relief Pursuant to Fed. R. Civ. P. 37 (R. Doc. 33) filed by Plaintiff, Myra Broussard, on June 30, 2020. Defendants filed their Opposition (R. Doc. 40) on July 29, 2020. Plaintiff filed a Reply (R. Doc. 43) on August 4, 2020.

**I.    Background**

Plaintiff initiated this action in state court with the filing of her Petition on July 18, 2019 (R. Doc. 1-2 at 3-13, hereinafter "Petition"). Therein, Plaintiff alleges that Defendants failed to pay her additional compensation owed for running Cub Care, an aftercare program, in addition to her duties as a principal at the LSU Lab School. (Petition at ¶ 13). Plaintiff goes on to allege that, after making amicable demand for the unpaid wages, the LSU Lab School was audited, false allegations against Plaintiff were published, and ultimately Plaintiff was terminated. (Petition at ¶¶ 15-20). Based on her allegations, Plaintiff seeks reimbursement for unpaid wages, as well as resulting damages and attorney's fees.

Defendants removed this action to federal court with the filing of their Notice of Removal (R. Doc. 1) on August 14, 2019, alleging federal question jurisdiction pursuant to 28 U.S.C. § 1331. A Scheduling Order (R. Doc. 10) was entered on October 23, 2019. Thereafter, the non-

expert discovery deadline was extended to June 1, 2020 "for the sole purpose of completing depositions." (R. Doc. 24).  On July 2, 2020, the district court entered an Order (R. Doc. 30) extending the discovery deadline to Wednesday, July 8, 2020, based on a Motion (R. Doc. 28) filed by Plaintiff on June 30, 2020, wherein Plaintiff requested extension of the discovery deadline for the purpose of filing a motion to compel as a result of certain discoveries made during depositions taken on June 17, 29, and 30, 2020.

## II.    Law and Analysis

### A.    Legal Standard

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

**B.     Analysis**

Plaintiff seeks to compel production of certain documents or groups of documents, which Plaintiff contends were not produced and she was unaware of until a "document dump" on June 12, 2020, and depositions taken shortly thereafter. (R. Doc. 33-1 at 3-6). Defendants argue first that Plaintiff's motion is untimely because the deadline to file a motion to compel as to written discovery was April 1, 2020, and further suggest that they provided full response as to the survey documents, that certain electronic communications were not within the scope of discovery and are not proportional to the needs of the case, and that they properly raised objections during deposition testimony.

**1.     Timeliness**

The Court finds Plaintiff's Motion timely. While the original deadline to complete discovery was April 1, 2020, the district court issued an Order on July 2, 2020 extending the discovery deadline to July 8, 2020. (R. Doc. 30). The district court's Order did not contain any restriction, and though Defendants suggest the deadline to file a motion to compel as to written discovery remained as originally set, this Court will not read in such a limitation. Furthermore, underlying the district court's Order was Plaintiff's motion requesting an extension for the purpose of filing a motion to compel, citing information obtained during depositions relating to specific written discovery requests. (R. Doc. 28). Thus, presumably the district court was aware of Plaintiff's intention when requesting the extension, and did not specifically prohibit any of the relief requested.

Defendants' suggestion that Plaintiff failed to complain about its April 2020 response to Plaintiff's March 2020 discovery requests until June 29, 2020 is unavailing in light of the representations made by Plaintiff. Plaintiff suggests that she first learned that certain responsive

3

information was not provided until a production on June 12, 2020 and depositions that took place on June 17, 29, and 30, 2020. Defendants bring forth no evidence that Plaintiff was aware of the existence of this information prior to June 2020. To the extent that the information sought is not within the scope of discovery, the Court can make an appropriate finding.

### 2. Survey Documents

Plaintiff seeks to compel production of specific documents or categories of documents, which Plaintiff contends she first learned of during depositions taken in June 2020. First, Plaintiff seeks to compel any and all documents underlying an alleged survey to which teachers responded. Plaintiff suggests that Defendants produced approximately 4,000 pages of documents just days before the June 17, 2020 deposition of Amy Westbrook, which production included certain documents related to a survey, but did not include any underlying documentation. (R. Doc. 33-1 at 3). Plaintiff also alleges that Defendants' interrogatory responses wherein Plaintiff requested the reasons for her termination did not include any information about the survey, and that Plaintiff first learned of the survey as part of the consideration for her non-reappointment during the deposition of Amy Westbrook. (R. Doc. 33-1 at 4). In Opposition, Defendants represent that there is no additional documentation to be produced with regard to the survey, as Defendants also stated in July 8, 2020 correspondence to counsel for Plaintiff. (R. Doc. 40 at 5; R. Doc. 33-14).

In light of Defendants' representation that there is no further information that could be produced underlying the survey, there is nothing for the Court to compel. The Court does note that Defendants make no objection to the survey information being within the scope of discovery, and further notes the parties' continuing obligation to provide supplemental or

4

amended discovery responses, if needed, pursuant to Fed. R. Civ. P. 26(e). Plaintiff's Motion to Compel (R. Doc. 33) as to any additional survey documents will, therefore, be denied.

### 3. Electronic Communications

Plaintiff next seeks to compel production of certain emails from parents or teachers raising complaints about Plaintiff. In support of this request, Plaintiff represents that she first learned of emails playing a role in her non-reappointment at the deposition of Amy Westbrook in June 2020. (R. Doc. 33-1 at 5). Defendants respond that the emails requested were not within the original scope of discovery, and alternatively, that production of same would be disproportionate and overly burdensome, suggesting that it would be impossible to cull through 10,000 emails in search of responsive information. (R. Doc. 40 at 5-6).

The Court finds Defendants' arguments without merit, and will compel production of any and all emails relating to complaints concerning Plaintiff from parents and teachers of the LSU Lab School. To begin, the emails sought were requested in Plaintiff's initial discovery propounded March 2, 2020, which sought both the reasons underlying the decision of non-reappointment as well as "any documents in your possession relating to Plaintiff's employment with you" in Interrogatory No. 4 and Request for Production No. 1, respectively. (R. Doc. 33-3 at 4-5). Where Defendants suggest Plaintiff's non-reappointment was attributable to factors independent of her demand for compensation related to Cub Care, including her job performance and the results of a survey along with parent/teacher complaints, the information underlying that assertion is within the scope of discovery.

Defendants' suggestion that production of any emails is disproportionate to the needs of the case and overly burdensome is similarly unavailing. To the contrary, such information goes directly to Defendants' position that they had sufficient reason justifying her non-reappointment

independent of Plaintiff's demand for compensation related to Cub Care. Where Defendants suggest in deposition testimony that part of the decision for Plaintiff's non-reappointment was attributable to complaints received via electronic mail from parents and/or teachers of the LSU Lab School, Plaintiff is entitled to discover the content of those electronic communications, whether it supports Defendants' position or serves to impeach witnesses. Defendants' production of a list of persons who may have communicated electronically with regard to Plaintiff is insufficient without the underlying communications.

Further, the Court is not convinced by Defendants' suggestion that such a production would require them to search over 10,000 emails such that the burden is too great. Defendants have made no showing that they do not have the capability to review ESI via search terms or other means that are common in discovery review and production, and that would substantially reduce the burden involved in the process. The Court notes that Defendants provided Plaintiff with a list of names on July 3, 2020 (R. Doc. 33-11 at 4), which would significantly limit the scope of the search, along with Plaintiff's request being limited to the time period of January through March 2019.

"Once the party seeking discovery establishes that the material requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted." *Allen v. Priority Energy Servs., L.L.C.*, 2017 WL 7789280, at *1 (W.D. Tex. Jan. 30, 2017). Plaintiff is entitled to discover electronic communications pertaining to her job performance from parents and teachers at the LSU Lab School, whether those communications be critical, complimentary, or neutral. Accordingly, Plaintiff's Motion to Compel (R. Doc. 33) as

to electronic communications pertain to her from parents or teachers between January and March 2019 will be granted.

### 4. Discovery of "Decision Makers"

Plaintiff argues that she is entitled to discover the identity of those who participated in the decision making with regard to Plaintiff's non-reappointment, specifically objecting to the assertion of attorney-client privilege during the deposition of Defendant Roland Mitchell. Plaintiff suggests that she "simply asked whether defendant LSU's general counsel provided input in Ms. Broussard's termination," and "did not ask for the actual communication or its substance." (R. Doc. 33-1 at 19). Defendants argue that the attorney-client privilege was properly invoked when "Counsel for Broussard then attempted to question Mitchell regarding what involvement and input LSU's general counsel had in Mitchell and Westbrook's decision." (R. Doc. 40 at 7).

Having reviewed the deposition testimony cited by Plaintiff, the Court notes that Mitchell indicated that the decision to allow Frank Rusciano back to work came through general counsel, but that counsel for Defendants objected when asked whether "the decision relating to [Plaintiff's] employment also in part came through general counsel." (R. Doc. 33-9 at 5-6). These inconsistent positions cannot be reconciled.  The Court makes no finding on whether the content of any communications with general counsel would be subject to privilege, but does find that the attorney-client privilege does not extend to the fact that a communication did or did not take place, especially considering the selective nature of when to acknowledge such communication. Such information would be required to appear on a privilege log as to written communications subject to the attorney-client privilege,[1] and similarly, whether general counsel

---

[1] Local Rule 26(c) requires a privilege log to include the "name of the document, electronically stored information, or tangible things; description of the document, electronically stored information, or tangible thing, which

was in communication with Mitchell regarding Broussard as well as Rusciano is relevant and discoverable.

At the same time, the Court will not permit the re-opening of the deposition of Defendant Mitchell for this purpose, where a certified written response to the question of whether he communicated with general counsel regarding the non-renewal of Plaintiff's contract would suffice. Accordingly, Plaintiff's Motion to Compel (R. Doc. 33) is granted insofar as she seeks to discovery whether Defendant Mitchell communicated with LSU general counsel regarding the decision not to renew Plaintiff's contract, and Defendant Mitchell shall provide a certified response in writing.

### 5. Media Statements

Plaintiff represents that, on July 3, 2020, Defendants produced certain information pertaining to statements made by LSU to the media, which they had not previously produced. (R. Doc. 33-1 at 11). Plaintiff, therefore, requests production of any and all statements made to the media by LSU with regard to her that have not been previously produced in response to discovery requests. Defendant does not appear to raise any substantive objections to the production of any communications with the media. Instead, Defendants respond that they "had not intentionally withheld those documents from Broussard and on July 3, 2020, Defendants supplemented its written discovery responses with email communications to the media regarding Broussard." (R. Doc. 40 at 3).

It is not clear whether Defendants have in their possession, custody, or control any additional documents representing communications to the media. Accordingly, Defendants shall

---

description must include each requisite element of the privilege or protection asserted; date; author(s); recipient(s); and nature of the privilege.

either produce responsive documents in their entirety subject to any validly asserted privilege, or certify that no additional documents exist.

### 6. LSU HR Email

Lastly, Plaintiff suggests that she first learned of electronic communications with the LSU Human Resources department during the deposition of Amy Westbrook, and requests supplemental production of such communications, purporting to be between Westbrook and Normand. (R. Doc. 33-1 at 12). Defendants do not appear to address this argument, but represent in correspondence to counsel for Plaintiff dated July 8, 2020, that the information sought was attached therein and had been previously produced pursuant to a public records request. (R. Doc. 33-14 at 1). There is, therefore, nothing for the Court to compel, subject to Defendants' continuing obligation to provide supplemental or amended discovery responses, if needed, pursuant to Fed. R. Civ. P. 26(e).

### 7. Fed. R. Civ. P. 37(c)

Plaintiff's final requested relief from the Court is for an order "striking defendants' newly-minted 'reason' for Ms. Broussard's termination and/or testimony from defendants Westbrook and Mitchell regarding the same," citing specific portions of the deposition testimony that represents such reasons. (R. Doc. 33 at 8). Plaintiff argues that she was effectively precluded from questioning the witnesses regarding the survey or parent complaints as a result of Defendants' failure to timely produce information regarding same. (R. Doc. 33 at 8).

The Court does not find such relief to be appropriate. Counsel had the opportunity to question these witnesses regarding the justifications of their actions, including the reasons provided. To the extent such reasons are supported with documentary evidence, those material

9

must be provided. The finder of act can determine whether these proferred reasons are legitimate based on whether such documentation exists.

At the same time, the Court does find that Defendants' failure to provide certain information in response to Plaintiff's original discovery requests was unjustified. Fed. R. Civ. P. 37(a)(5)(C) permits the Court to "apportion the reasonable expenses" for bringing the motion to compel, including attorney's fees. The Court finds that 50% of the expenses incurred is a reasonable apportionment. Counsel for Plaintiff shall promptly provide counsel for Defendants an itemized description of the time and amounts incurred in the bringing of this instant Motion to Compel to conclusion, and the parties are encouraged to reach an agreement as to 50% of the reasonable costs and expenses to be paid by the Defendants to the Plaintiff. If the parties are unable to reach an agreement, the Court reserves Plaintiff's ability to seek relief pursuant to this Order and the Defendants an opportunity to be heard as to the reasonableness of such relief.

### III. Conclusion

Based on the foregoing, **IT IS ORDERED** that the Motion to Compel and Alternatively, for Relief Pursuant to Fed. R. Civ. P. 37 (R. Doc. 33) filed by Plaintiff, Myra Broussard, is **GRANTED in part** and **DENIED in part** as set forth more fully herein.

**IT IS FURTHER ORDERED** that Defendants shall provide supplemental production as ordered herein within **fourteen (14) days** of the date of this Order.

**IT IS FURTHER ORDERED** that Defendant shall bear the costs of Plaintiff in bringing this Motion in accordance with Fed. R. Civ. P. 37(c)(1)(A).

Signed in Baton Rouge, Louisiana, on September 28, 2020.

                                    **RICHARD L. BOURGEOIS, JR.**
                                    **UNITED STATES MAGISTRATE JUDGE**