UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MYRA BROUSSARD                                              CIVIL ACTION

VERSUS

BOARD OF SUPERVISORS OF                          NO. 19-00527-BAJ-RLB
LOUISIANA STATE UNIVERSITY
AND A & M COLLEGE, ET AL.

### RULING AND ORDER

Before the Court are three motions *in limine*: **Defendants' Motion *In Limine* (Doc. 63)**; **Defendants' Supplemental Motion *In Limine* (Doc. 67)**; and **Plaintiff's Motion *In Limine* (Doc. 64)**. Each motion is opposed. For reasons to follow, each motion be granted in part and denied in part.

### I. BACKGROUND

This is an employment dispute. As stated in the Court's May 25, 2021 Order denying Defendants' motion for summary judgment (Doc. 71, the "Summary Judgment Order"), the parties agree to nothing, save that Defendants employed Plaintiff in some capacity at some undefined term.

The Summary Judgment Order sets forth the relevant factual and procedural background, and is incorporated by reference here. A four-day trial is set to begin on August 9, 2021, where the jury will weigh the evidence supporting Plaintiffs' remaining claims of defamation, discharge in violation of due process, unpaid wages in violation of La. R.S. § 23:631, and arbitrary demotion in violation of La. R.S. § 17:443(A).

Now the parties have submitted multiple motions *in limine*, seeking to limit or

exclude all manner of evidence from trial.

## II. ANALYSIS

At the outset, it bears reminding that motions *in limine* are *not* favored.

> Virtually any objection to the admissibility of evidence can and should be handled in the old-fashioned way, to wit: counsel objecting at the time the evidence is offered, thereby allowing the Court to rule on the objection in the context of the trial. *In limine* relief is warranted only in unusual situations, such as a matter so explosive or so incendiary that sustaining an objection in the routine way may not be sufficient to overcome the risk of undue prejudice.

*Louis Vuitton Malletier v. Eisenhauer Rd. Flea Mkt., Inc.*, No. 11-cv-124, 2012 WL 13034079, at *1 (W.D. Tex. Jan. 4, 2012) (Hudspeth, J.); *accord United States v. Smith*, No. 18-cr-118, 2019 WL 4281908, at *1 (M.D. Ala. Sept. 10, 2019) (Watkins, J.) ("Motions *in limine* are not favored under the law.") *D'Alton v. City of Billings*, No. 03-cv-159, 2006 WL 8431820, at *1 (D. Mont. Oct. 17, 2006) (Anderson, M.J.) ("[M]otions *in limine* are not favored, and questions of admissibility should generally be resolved as they arise at trial. Unless the evidence is clearly inadmissible for *any* purpose, or the mere attempt to introduce the evidence at trial will infuse the trial with undue and incurable prejudice, the Court should defer ruling until the time of trial, so that questions involving foundation, relevancy, and prejudice may be considered in the context of all the other evidence.").

Here, the parties seek dozens of pretrial evidentiary rulings. Almost universally, the evidentiary issues presented are pedestrian, and certainly *not* "so explosive or incendiary" as to require pretrial relief.

Against this backdrop, the Court considers the specific items contained in the parties' motions. The Court addresses Defendants' motions first, followed by

Plaintiff's motion.

### A. Defendants' Motions

#### i. Untimely-disclosed evidence

Defendants seek to exclude Plaintiff's Exhibits 93 and 94 (listed in the Joint Pretrial Order), and Plaintiff's witness Johnny Shoptaugh (*not* listed in the Joint Pretrial Order), contending that this evidence was not timely identified under Federal Rule of Civil Procedure ("Rule") 26. Defendants further contend that Exhibits 93 and 94 are not relevant to Plaintiff's claims.

##### a. Mr. Shoptaugh will be excluded from Plaintiff's case-in-chief

According to Plaintiff, Mr. Shoptaugh is a ULS employee and possesses firsthand knowledge of Interim Superintendent Westbrook's motivations for demoting and terminating Plaintiff at the May 22, 2019 meeting. Plainly, such testimony is relevant to Plaintiff's claims. Still, however, the Court's pretrial order instructions prohibit trial testimony from witnesses "not listed in the parties' jointly submitted Pretrial Order, absent good cause shown."[1] Mr. Shoptaugh does not appear among Plaintiff's witnesses listed on the Joint Pretrial Order, Plaintiff has not moved to amend the Joint Pretrial Order to include Mr. Shoptaugh, and Plaintiff has not demonstrated good cause to add Mr. Shoptaugh over Defendants' objection. Accordingly, the Court will exclude Mr. Shoptaugh from providing testimony in Plaintiff's case-in-chief.

---

[1] Pretrial Order Instructions In Civil Matters Before Chief Judge Brian A. Jackson, at § III(J), *available at*: https://www.lamd.uscourts.gov/sites/default/files/forms/PretrialOrderInstructionsInCivilMattersBeforeChiefJudgeBrianAJackson.pdf.

3

On the other hand, as noted by Plaintiff, under Rule 26(b)(3) witnesses used solely for impeachment do *not* have to be disclosed prior to trial. *Duke v. Performance Food Grp., Inc.*, 594 F. App'x 829, 831 (5th Cir. 2014). As such, the Court will reserve ruling on the admissibility of Mr. Shoptaugh's testimony for impeachment purposes.

### b. Exhibits 93 and 94 will be admitted to the extent they are relevant to Plaintiff's claims

Exhibit 93 is an August 25, 2020 Accreditation Report authored by LSU, and is a public record. Exhibit 94 is a March 2017 Report of the External Review Team for LSU Laboratory School, and is likewise a public record. Defendants complain that Plaintiff only identified these exhibits in her amended discovery responses, submitted on August 31, 2020, *after* the July 8, 2020 final discovery deadline. Defendants further contend that these exhibits are not relevant because "Defendants readily concede that ULS is an excellent school." (Doc. 63-1 at 4).

Rule 26(e) specifically requires a party to supplement its disclosures and discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). The Rule's "basic purpose" is to prevent "prejudice and surprise" at trial. *Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994).

Here, Defendants cannot credibly claim that they are prejudiced or surprised by the Exhibits, despite having been identified for the first time after discovery closed. Plaintiff supplemented her discovery responses to identify these additional Exhibits

4

nearly one year before trial, thus affording Defendants ample opportunity to respond. Equally important, Defendants authored these Exhibits and are therefore well-aware of their contents.[2] Defendants' objection to the timeliness of these Exhibits is overruled.

Without more information, and without having been provided copies of Exhibits 93 and 94, the Court has no basis to determine whether these Exhibits are relevant or not. The Court will reserve ruling on the relevance of Exhibits 93 and 94.

### ii.   Defendants' treatment of Frank Rusciano

Next, Defendants seek to exclude all evidence tending to show that Plaintiff and Frank Rusciano were treated differently following "the Cub Care debacle," including that Plaintiff was demoted and terminated, whereas Mr. Rusciano was allowed to take two years' paid leave, and then return to employment at ULS. Defendants argue that any such evidence is irrelevant and unfairly prejudicial because "Plaintiff has not alleged a claim for disparate treatment." (Doc. 63-1 at 7). Plaintiff concedes that she has not alleged a stand-alone claim of disparate treatment, but nonetheless argues this evidence is relevant (and not unduly prejudicial) to her claim of reprisal under La. R.S. § 23:967, because it shows that Defendants' decision to terminate her employment was motivated by pretext. (Doc. 69 at 5-6).

Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in

---

[2] Further, and in any event, these Exhibits are public records, and therefore subject to judicial notice, which may occur "at any stage of the proceeding." Fed. R. Evid. 201; *see Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015) (taking judicial notice of public records available on official websites under Federal Rule of Evidence 201(b)(2)).

5

determining the action." Fed. R. Evid. 401. Relevant evidence is generally admissible, Fed. R. Evid. 402, but may be excluded "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, [or] misleading the jury," Fed. R. Evid. 403.

Plainly, evidence is not relevant—and is therefore inadmissible—if it relates only to non-existent claims. Plaintiff does not allege a claim of disparate treatment, and her claim of reprisal has since been dismissed with prejudice. As such, evidence regarding Mr. Rusciano's fate at ULS following "the Cub Care debacle" cannot be admitted in support of any such claims.

This is not the end of the inquiry, however, because Plaintiff also maintains a viable defamation claim, to which Defendants have raised a defense of qualified privilege. As explained in the Court's July 8, 2021 Order denying Defendants' motion for summary judgment, Defendants' invocation of qualified privilege requires a "determination of whether the privilege was abused, which [in turn] requires that the grounds for abuse—malice or lack of good faith—be examined." *Kennedy v. Sheriff of E. Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So. 2d 669, 682. The summary judgment evidence shows that Plaintiff and Mr. Rusciano were equally involved in "the Cub Care debacle," (Defendants' words). If Defendants treated Mr. Rusciano more favorably afterwards, such treatment would tend to show that Defendants' defamatory statements against Plaintiff were motivated by malice or bad faith. As such, evidence regarding Mr. Rusciano's treatment is relevant, and not unduly prejudicial because it merely provides the appropriate context within which to

6

evaluate Plaintiff's defamation claim. Defendants' objection is overruled.

### iii. Evidence of ULS athletic camps

Defendants also seek to exclude all evidence of "summer camps hosted at ULS by athletic coaches," arguing that Plaintiff should not be allowed to compare "the creation of Cub Care LLC to other camps run by athletic coaches." (Doc. 63-1 at 7-8). Defendants insist that any such comparison is inappropriate because Louisiana law expressly allows public employees to contract with their employers to provide athletic coaching, but would forbid a public employee from contracting with her employer to provide school after-care services. (*Id.* at 8). "Accordingly, the set up and structure of a camp run by an athletic coach is governed by a rule that was not applicable to Cub Care," and "information regarding coach's camps is irrelevant, [and] has the potential to be confusing and/or prejudicial." (*Id.* at 9).

Plaintiff responds that she "intends to present evidence and testimony related to how other camps were run at LSU and/or LSU Lab in support of her claim for defamation, namely as to the elements of falsity and fault," which are separate elements that stand apart from any consideration of whether Cub Care LLC's corporate structure ran afoul of Louisiana law. (Doc. 69 at 6-7).

Again, Defendants' objection will be overruled. Plaintiff has maintained throughout these proceedings that she organized Cub Care LLC with ULS's express permission and approval. LSU's September 28 Audit reflects the same, stating that Superintendent Smith "approved" Plaintiff's additional compensation, and that Plaintiff thereafter conducted her actions vis-à-vis Cub Care "[w]ith the assistance of the Superintendent's Office." (Doc. 58-10 at 39). Thereafter, however, the September

7

28 Audit alleges that Plaintiff surreptitiously schemed to line her own pockets by withholding student funds after ULS denied her request for additional compensation. This blatant contradiction—*i.e.*, that Plaintiff conducted herself with the full support and approval of ULS administration and at the same time secretly conspired to violate ULS policy and Louisiana law—is at the heart of Plaintiff's defamation claim. Evidence that Defendants regularly contracted with employees to provide "coach's camps" at ULS supports Plaintiff's assertion that Defendants encouraged Plaintiff to organize Cub Care LLC with a similar structure. The same evidence tends to show that Defendants' subsequent accusations that Plaintiff acted covertly and in her own self-interest were false and malicious. As such, the evidence is relevant, and, again, not unduly prejudicial or confusing because it provides the appropriate context within which to evaluate Plaintiff's defamation claim. Defendants' objection is overruled.

### iv. Evidence relating to Plaintiff's replacement at ULS

Defendants seek to exclude evidence relating to Plaintiff's replacement as elementary principal, contending that "[h]irings ... subsequent to LSU's notice of non-renewal to Plaintiff have no bearing on Plaintiff's claims." (Doc. 63-1 at 9). Plaintiff responds that such evidence is related to her reprisal claim *and* her due process claim, because it "tends to make the fact that LSU did demote and terminate her more probable." (Doc. 69 at 8).

Again, evidence is not relevant if it relates only to nonexistent claims. As such, this evidence cannot be admitted to support Plaintiff's failed reprisal claim. Yet, again, however, this is not the end of the analysis, because Plaintiff's due process claim also requires proof that she was discharged. *See Bledsoe v. City of Horn Lake,*

8

*Miss.*, 449 F.3d 650, 653 (5th Cir. 2006). Notably, Defendants have challenged this specific element, asserting in their summary judgment papers that Plaintiff was *not* discharged, and was merely non-renewed. Evidence that Plaintiff was replaced plainly supports her claim that she was discharged from her role as elementary principal. Defendants' objection is overruled.

### v. Plaintiff's medical records

Defendant seeks to exclude evidence of Plaintiff's medical history since her termination, arguing that "Plaintiff should not be permitted to refer to her medical records or to testify regarding any medical issues she has experienced when Defendants have never had the opportunity to review these records." (Doc. 63-1 at 9). Plaintiff responds that she timely identified her medical records as required by Rule 26, but objected to production of the same without a protective order, and thereafter submitted a proposed protective order for Defendants' approval. "Defendants never responded," and failed to make any additional inquiry regarding these records. (Doc. 69 at 20-21). Plaintiff states that she "intends to produce these records" to Defendants on the July 30, 2021 deadline to exchange exhibits, and further asserts that "Defendants are not prejudiced by these exhibits as they are limited to the issue of damages." (*Id.* at 21).

The Court will not exclude Plaintiff's medical records. First, these records are obviously relevant to Plaintiffs' damages, which may account for adverse health consequences resulting from Defendants' actions. *See, e.g., Cluse v. H & E Equip. Servs., Inc.*, 2009-574 (La. App. 3 Cir. 3/31/10), 34 So. 3d 959, 971 (affirming that damages awards for defamation may include compensation for "humiliation,"

9

"embarrassment," and "mental distress"), *writ denied*, 2010-0994 (La. 9/17/10), 45 So. 3d 1043. Moreover, Defendants are reminded that "[d]iscovery is, in large part, a self-policing process." *Pendlebury v. Starbucks Coffee Co.*, No. 04-cv-80521, 2005 WL 8156155, at *1 (S.D. Fla. Sept. 8, 2005) (Seltzer, M.J.). Here, Plaintiff timely identified her medical records, and thereafter objected to their production absent a protective order. Plaintiff even proposed a protective order for Defendants' consideration. At that point, it was incumbent upon Defendants to make the next move. Instead, Defendants did nothing, and appear to have forgotten the issue until Plaintiff included her medical records among her Exhibits in the Pretrial Order.

Exclusion of evidence under Rule 37 is a severe sanction, not justified by the record here, which shows that the ball was plainly in Defendants' court. Still, Defendants are obviously entitled to review this evidence sufficiently in advance of trial to prepare their defense. *See Bankston v. Kansas City S. Ry. Co.*, No. CV 03-577-A-M2, 2005 WL 8155221, at *2 (M.D. La. Oct. 17, 2005) (Noland, M.J.) ("The Federal Discovery Rules, by design, are calculated to prevent "trial by ambush." (quoting *Shelak v. White Motor Co.*, 581 F.2d 1155 (5th Cir. 1978)). As such, Plaintiff shall *immediately* produce to Defendants all medical records she intends to rely on at trial.

### vi. Plaintiffs' Exhibits 40, 51-56, 61, 62, 63, 76, 78, 79, 86, 89, 90, 95, 97

Defendant seeks to exclude Plaintiffs' Exhibits 40, 51-56, 61, 62, 63, 76, 78, 79, 86, 89, 90, 95, 97, on the basis that they are irrelevant to Plaintiffs' remaining claims.[3]

---

[3] Further, Defendants' seek an order allowing them to redact portions of their *own* exhibit, Defendant's Exhibit 13. Defendant's request is contingent on the (non)availability of a witness to testify at trial. The Court will reserve ruling on Defendants' objection until it is

10

Plaintiff offers no opposition to Defendants' arguments regarding Exhibits 62, 63, 95, and 97. "[T]he Court will not speculate on arguments that have not been advanced, or attempt to develop arguments on [Plaintiff's] behalf." *Gray v. City of Denham Springs*, No. 19-cv-00889, 2021 WL 1187076, at *5 (M.D. La. Mar. 29, 2021) (Jackson, J.) (alterations omitted and quotation marks omitted). Defendants' objections to Exhibits 62, 63, 95, and 97 will be sustained as unopposed, and these Exhibits will be excluded from trial.

The Court is satisfied based on the present showing that Plaintiff's Exhibits 40, 51-56, 62, 76, 78, 79, 86, 89, and 90 are relevant to Plaintiff's remaining claims of defamation, discharge in violation of due process, unpaid wages in violation of La. R.S. § 23:631, and arbitrary demotion in violation of La. R.S. § 17:443(A). Accordingly, Defendants' objections will be overruled as to these Exhibits, without prejudice to Defendants' right to re-assert specific objections should cause arise at trial.

### vii. Plaintiff's deposition errata sheet

Next, Defendants object to Plaintiff's deposition errata sheet, arguing that it makes substantive changes that are inconsistent with Plaintiff's deposition testimony. Specifically, Defendants object that, at her deposition, Plaintiff testified that she did *not* take Cub Care documents home, but then submitted an errata sheet stating that she *did* take documents home, and only returned them to ULS after she met with auditors. (Doc. 63-1 at 13-14). Defendants argue that "Plaintiff's original answers [should] remain a part of the record," (Doc. 63-1 at 14), so that they may

---

determined whether or not the witness will appear at trial.

11

"question Plaintiff about the change in testimony" on cross-examination, (Doc. 75 at 6).

Rule 30(e) allows a deponent to review a deposition transcript and "[i]f there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e); *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 480 (5th Cir. 2012). As noted recently by this Court, authorities are split regarding the proper interpretation of Rule 30(e):

> A majority point to Rule 30(e)'s plain terms and therefore permit deponents to make changes that contradict the original answers given, even if those changes are not supported by convincing explanations, as long as the deponent complies with the instructions provided within the rule itself for making such changes. A substantial and growing minority, however, hold that Rule 30(e) is to be used for corrective, and not contradictory, changes. A vision animates this school: if a deponent can freely revise their testimony afterward, the deposition has become a take home examination, and its utility as a discovery device wholly forfeited.

*United States v. Louisiana*, 196 F. Supp. 3d 612, 677–78 (M.D. La. 2016) (deGravelles, J.) (quotation marks omitted; citing authorities), *vacated on other grounds*, 2017 WL 4118968 (M.D. La. Aug. 21, 2017).

To date, the U.S. Court of Appeals for the Fifth Circuit has not addressed the scope of permissible substantive corrections to a deposition under Rule 30(e). District courts within the Fifth Circuit have varied in their approaches, with some adopting the "majority" view described above, and others adopting the "minority" view. *See id.* at 677–78; *see also Reilly v. TXU Corp.*, 230 F.R.D. 486, 487 (N.D. Tex. 2005) (discussing authorities).

Based on the present record, and faced with a split of authorities and no clear

guidance from the Fifth Circuit, the Court determines that Defendants should be allowed to question Plaintiff regarding her revisions "so that the reasons for her changes can be subjected to proper scrutiny." *See Louisiana*, 196 F. Supp. 3d at 678. Plaintiff's errata sheet plainly contradicts her deposition testimony, and calls into question Plaintiff's credibility. In any other circumstance, this would be an obvious point of cross-examination. Accordingly, Defendants' objection is sustained, and Plaintiff's errata sheet *and* the original version of her deposition transcript will be allowed to remain in the trial record. *E.g., Hernandez v. Rush Enterprises, Inc.*, 336 F.R.D. 534, 536 (E.D. Tex. 2020) ("Hernandez's errata sheet will be allowed to remain in the trial record, along with the original version of the transcript.").

### viii. The ULS cheerleading squad survey

Defendants seek to exclude evidence of a prior survey conducted by Interim Superintendent Westbrook regarding the ULS high school cheerleading program, contending that it is "wholly unrelated to Plaintiff's claims." (Doc. 67-1 at 3). Plaintiff counters that the survey is relevant to her reprisal claim because it supports her allegation that her termination was pretextual. (Doc. 69 at 15). Having dismissed Plaintiff's reprisal claim, the Court will exclude evidence of the cheerleading survey.

### ix. Interim Superintendent Westbrook's previous application for the principal position at ULS

Defendants seek to exclude evidence of that, in 2006, Interim Superintendent Westbrook applied for a principal position at ULS, but was passed over in favor of Plaintiff. (Doc. 67-1 at 3-4). Again, Plaintiff responds that such evidence is relevant to her reprisal claim because it shows that Interim Superintendent Westbrook

harbored a grudge, and fired her for illegitimate reasons. Again, Plaintiff's reprisal claim has been dismissed, the Court will exclude evidence of Interim Superintendent Westbrook's prior job application.

### x.    ULS's admission criteria and practices

Defendants seek to exclude any reference to ULS's admissions criteria, asserting that Plaintiff intends to criticize the admissions process solely to "inflame the jury and/or embarrass." (Doc. 67-1 at 5-6). Plaintiff responds that ULS's admissions process is fair game because many of the parent complaints that allegedly resulted in her termination specifically referenced the admissions process. The Court is satisfied based on the present showing that this evidence is relevant to Plaintiff's remaining claims of discharge in violation of due process and arbitrary demotion in violation of La. R.S. § 17:443(A). Accordingly, Defendants' objections will be overruled, without prejudice to Defendants' right to re-assert specific objections should cause arise at trial

### xi.   Defendants' delivery the May 22, 2019 non-renewal letter to Plaintiff

Finally, Defendants seek to exclude evidence related to "the manner in which [Plaintiff] received the notice of her nonrenewal as principal of the University Lab School." (Doc. 67-1 at 5). This objection verges on the absurd. Plainly, the "manner" in which Plaintiff received notice of her demotion and termination is relevant to her claims of discharge in violation of due process and arbitrary demotion. Defendants' objection is overruled.

14

## B. Plaintiff's Motion

### i. Evidence relating to Defendants' reasons for demoting and terminating Plaintiff

Plaintiff seeks to exclude "any testimony or evidence relating to [Defendants'] alleged legitimate, non-retaliatory reason(s) for plaintiff's demotion/termination, including an alleged teacher survey and/or email complaints from parents and other faculty." (Doc. 64-1 at 1-2). Plaintiff complains that she has not received "the contents of the responses" resulting in the teacher survey results, and, further, has received only 4 of 25 "complaint" emails. (*Id.* at 3-4). As such, Plaintiff argues that she has had no ability to test Defendants' alleged reasons for her termination, and would be prejudiced if this evidence is admitted at trial. (*Id.* at 5).

Notably, Defendants do *not* contest Plaintiff's assertions regarding the missing emails. (*See* Doc. 70 at 3-5). Still, Defendants argue that they should be allowed to present evidence that "emails and complaints from parents and teachers and the results of the survey certainly formed the motivation for [Plaintiff's termination]." (Doc. 70 at 4).

As an initial matter, the Court is deeply troubled by Defendants' production of emails (or lack thereof). Indeed, the Court has previously addressed precisely this issue. In its September 28, 2020 Order granting Plaintiff's motion to compel, the Court unambiguously ordered Defendants to produce "any and all emails relating to complaints concerning Plaintiff from parents and teachers of the LSU Lab School," (Doc. 47 at 5), and further ruled that "[t]o the extent [Defendants' reasons for Plaintiff's termination] are supported with documentary evidence, those materials

15

must be provided Plaintiff," (Doc. 47 at 9-10). Apparently, Defendants disregarded this direct Order. Disregarding a Court order is sanctionable conduct.[4]

In any event, the challenged emails and survey results relate exclusively to Defendants' non-retaliatory reasons for terminating Plaintiff, and therefore are relevant only to Plaintiff's reprisal claim. Again, Plaintiff's reprisal claim has been dismissed. As such, the Court will exclude all evidence related to the teacher survey and email complaints that allegedly formed Defendants' non-retaliatory reasons for terminating Plaintiff.[5]

### ii. Additional objections to evidence relating to Defendants' reasons for demoting and terminating Plaintiff

Separately, Plaintiff seeks to exclude (1) the teacher survey, (2) a spreadsheet summarizing parent complaint emails, and (3) Defendants' Exhibit 33—identified as "Emails constituting parent and teacher complaints to Westbrook between January 1, 2019, and March 31, 2019"—on the basis that these documents contain hearsay, and, further, are each derived from sources that were not produced during discovery. (Doc. 64-1 at 6-10). For separate reasons explained above, the Court has already ruled that the teacher survey, the parent complaint emails, and all related exhibits are inadmissible because they are not relevant to Plaintiff's remaining claims. As

---

[4] Separately, the Court shall require Defendants and Defendants' counsel to show cause why sanctions should not be imposed for violating of this Court's September 28 Order requiring production of all evidence relating to Defendants' reasons for terminating Plaintiff.

[5] The Court will reconsider this ruling at trial, to the extent the trial record shows that the teacher survey and complaint emails may be relevant to Plaintiff's claim of arbitrary demotion (which requires an evaluation of the "written reasons" for Plaintiff's demotion, La. R.S. § 17:443(A)).

16

such, Plaintiff's objections here are overruled as moot.[6]

### iii.   Defendants' Exhibit 34, "LSU Audit working papers"

Plaintiff objects to Defendants' Exhibit 34—identified as "LSU Audit working papers"—asserting that this document was never identified or produced in discovery, despite being responsive to Plaintiff's discovery requests. (Doc. 64-1 at 11). Defendants offer no counter-argument, and state only that "[o]nce the parties agree to a joint exhibit list, the Defendants may agree to withdraw these documents." (Doc. 70 at 6).

Again, the Court will not speculate on arguments that have not been advanced, or attempt to develop arguments on a party's behalf. *Gray*, 2021 WL 1187076, at *5 Plaintiff's objection to Exhibit 34 will be sustained as unopposed, and this Exhibit will be excluded from trial.

### iv.   References to "taxpayer monies" in satisfaction of judgment

Finally, Plaintiff seeks to preclude Defendants "from making any mention of whether or not taxpayer monies are and/or would be involved depending on the outcome of the jury's decision," on the basis that "any such references would serve only to inflame the jury and obscure trial of the claims in this case." (Doc 64-1 at 11). Defendants respond that they "currently have no intention of addressing the fact that taxpayer monies would be needed to satisfy any judgment," but nonetheless counsel the Court to "withhold ruling on any such issue depending on the nature of the

---

[6] And again, the Court will reconsider this ruling at trial, to the extent the trial record shows that the teacher survey and complaint emails may be relevant to Plaintiff's remaining claims.

17

arguments presented." (Doc. 70 at 6).

If Plaintiff proves her case, and the jury determines that she is entitled to a damages judgment, then, plainly, the quantum of damages should be determined according to the facts of the case, *not* the source of the funds that will be used to pay the judgment. It follows that any reference to "taxpayer monies" funding a judgment would be unfairly prejudicial. Plaintiff's objection is sustained.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that **Defendants' Motion *In Limine* (Doc. 63)**, **Defendants' Supplemental Motion *In Limine* (Doc. 67)**, and **Plaintiff's Motion *In Limine* (Doc. 64)** are each **SUSTAINED IN PART** and **OVERRULED IN PART**, as set forth in this Order.

Baton Rouge, Louisiana, this 19th day of July, 2021

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA